**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Coral Herndon, | No. CV-25-01786-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Janssen Pharmaceuticals Incorporated, | |
| Defendant. | |

Plaintiff Coral Herndon filed this lawsuit against defendant Janssen Pharmaceuticals, Inc. ("Janssen") after suffering a pulmonary embolism and related symptoms following her use of a Janssen medication. Herndon brought a single claim alleging product liability under a strict liability failure-to-warn theory. This court previously granted Janssen's motion to dismiss because Herndon did not allege sufficient facts showing causation. (Doc. 22.) Herndon filed an amended complaint (Doc. 23), and Janssen once again moves to dismiss (Doc. 25). Its motion is denied.

I.      **Factual Background**

Janssen creates and develops medications, including antipsychotic medications with the active ingredient paliperidone (and paliperidone palmitate, an injectable version of paliperidone). (Doc. 23 at 2-3.) Herndon's second amended complaint ("SAC") describes about a decade of studies linking paliperidone to pulmonary embolisms and two related diagnoses, deep vein thrombosis and venous thrombosis. (Doc. 23 at 3-8.) Janssen has marketed multiple paliperidone drugs with product labels that warn about these possible

adverse reactions. (Doc. 23 at 2-3.)

In 2009, the FDA approved for sale Janssen's Invega Sustenna, a long-acting injectable paliperidone palmitate antipsychotic drug. (Doc. 23 at 3.) Janssen alerted authorities in New Zealand (Doc. 23 at 3; *see* Doc. 23-3 at 26) and Canada (Doc. 23 at 7-8; *see* Doc. 23-11 at 21) that pulmonary embolism, deep vein thrombosis, and/or venous thrombosis had been identified as adverse reactions to Invega Sustenna and suggested prescribers identify risk factors and undertake measures to prevent those reactions. Herndon alleges although Janssen knew Invega Sustenna could cause these adverse reactions, its 2022 U.S. product label did not include warnings about them. (Doc. 23 at 8; *see* Doc. 23-12.)

Herndon was prescribed Invega Sustenna on September 28, 2022, and received monthly injections for about seven months. (Doc. 23 at 9.) At the time, Herndon had risk factors for pulmonary embolism, deep vein thrombosis, and venous thrombosis, including her habits of smoking and drinking alcohol; elevated blood pressure and cholesterol; and a family history of heart attacks and other issues. (Doc. 23 at 9.) In early May 2023, Herndon began experiencing difficulty breathing and pain in her back. (Doc. 23 at 10.) She attributed these conditions to sleeping in an awkward position and did not immediately seek medical care, but the pain worsened. (Doc. 23 at 10.) On May 8, 2023, Herndon was admitted to the hospital with symptoms of "pulmonary embolism/filling defects." (Doc. 23 at 10.)

She alleges a reasonable prescribing professional "such as [her] prescribing professional," given proper warning the medication may cause pulmonary embolisms, should have prescribed an alternative treatment, monitored her blood clotting studies for risk, and explained to her the early warning signs of pulmonary embolism and related conditions so she knew when to seek care. (Doc. 23 at 9-10.) If Janssen had given her prescribing professional "adequate warning of the danger of using Invega Sustenna," the professional "would have reduced the risk of harm" by doing some or all of these things. (Doc. 23 at 12.) She further alleges that had her prescriber taken those steps, she would not have suffered pulmonary embolism symptoms or would have suffered less severe

symptoms. (Doc. 23 at 11-12.) She does not identify her prescribing physicians.[1] (Doc. 23.)

This court dismissed Herndon's first amended complaint because it did not sufficiently plead causation. (Doc. 22 at 4.) Herndon filed a second amended complaint (Doc. 23), which Janssen now moves to dismiss on similar grounds (Doc. 25).

## II.    Legal Standard

A motion to dismiss may be granted "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## III.    Analysis

### A. Causation is Adequately Pleaded

Plaintiffs alleging strict liability for pharmaceutical products must show "[1] the product is in a defective condition and unreasonably dangerous, [2] the defective condition existed at the time the product left the defendant's control, and [3] the defective condition is the proximate cause of the plaintiff's injury." *Gosewisch v. Am. Honda Motor Co.*, 737 P.2d 376, 379 (Ariz. 1987), *superseded by statute on other grounds as recognized by Jimenez v. Sears, Roebuck and Co.*, 904 P.2d 861, 864 (Ariz. 1995). Warning label defects

---

[1] Without identifying any mechanism that would allow the court to consider it, Herndon attached to her opposition to the motion to dismiss a declaration identifying multiple possible prescribing physicians and arguing the hospital refused to provide further information. (Docs. 26 at 4; 26-1 at 2-3.) But courts in this district "regularly decline to consider declarations and exhibits submitted in opposition to a motion to dismiss" if the information is not incorporated by reference. *Laws. for Fair Reciprocal Admission v. Timmer*, 788 F. Supp. 3d 1000, 1011 (D. Ariz. 2025), *reconsideration denied*, No. 24-CV-02175-PHX-GPC, 2025 WL 1625412 (D. Ariz. May 30, 2025). The information is not mentioned in the SAC and cannot be considered here.

can make a product defective and unreasonably dangerous: because manufacturers have a general duty to "warn consumers of foreseeable risks of harm from using their products," their failure to warn may give rise to a strict liability claim. *Paseka v. Ethicon Inc.*, No. CV-20-00100-PHX-SRB, 2020 WL 8175427, at *3 (D. Ariz. Nov. 9, 2020) (citing *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 949 (Ariz. 2016)). Arizona cases use the "learned intermediary doctrine" in this context, under which a drug manufacturer fulfills its duty to warn consumers when it provides "reasonable instructions or warnings regarding foreseeable risks of harm" to a health-care provider like a prescribing physician (rather than directly to a patient). *Watts*, 365 P.3d at 949.

As was true previously, the learned intermediary doctrine creates causation issues for Herndon. Because the doctrine analyzes primarily the prescriber's behavior, causation turns on the impact a proper warning would have had on the physician(s) who prescribed the drug. *Id.* at 948. So, to establish proximate cause, Herndon must allege facts showing her prescribing physician "would have acted differently if a warning had been given." *Welch v. Wright Med. Tech., Inc.*, No. CV-11-2113-PHX-DGC, 2012 WL 4711899, at *2 (D. Ariz. Oct. 3, 2012). This court previously held this standard requires facts suggesting the physician "would have given different instructions to the plaintiff or prescribed a different drug . . . [or] at a minimum, some facts 'regarding what doctor prescribed the medications, what information [the plaintiff] or her doctor relied on at the time, or whether they may have considered alternative remedies.'" (Doc. 22 at 4 (citing *Murrell v. Wyeth Inc.*, No. CV-13-0290-PHX-DGC, 2013 WL 1882193, at *6 (D. Ariz. May 3, 2013)).)

The court dismissed Herndon's first amended complaint because she did not allege facts about her doctor, what information her doctor may have relied on in prescribing Invega Sustenna, or why she or her doctor would have avoided Invega Sustenna if given a proper warning (for instance, because of comorbidities). (Doc. 22 at 5.) The SAC adds relevant allegations, including that Herndon presented risk factors for pulmonary embolism based on her family history and because she smoked, drank, and had "borderline high" cholesterol. (Doc. 23 at 9.) Despite these risk factors, Herndon's prescriber did not explain

- 4 -

to her the early warning signs of pulmonary embolism, a warning she alleges would have prompted her to seek medical treatment for her symptoms sooner and thereby suffer fewer injuries. (Doc. 23 at 10-12.) Herndon further alleges a "reasonable prescribing professional," knowing her risk factors and properly warned about Invega Sustenna's pulmonary embolism risk, would have prescribed an alternative medication at the outset or eventually switched Herndon's medication after monitoring her blood pressure and seeing an increasing risk of pulmonary embolism. (Doc. 23 at 9-11.) Herndon's complaint again does not allege facts which shed light on her specific physician's decision-making. She concedes she cannot identify the prescribing physician. (Doc. 26 at 4.)

Some courts in this circuit have held it is not sufficient for plaintiffs to allege physicians "would take efforts to prevent the harm caused by the [product] if they were warned of the potential harm"—the plaintiff must actually allege "facts regarding *[her] own* prescribing physician's decision-making process." *Dreifort v. DJO Glob. Inc.*, No. 318CV02393BTMKSC, 2019 WL 5578240, at *9 (S.D. Cal. Oct. 28, 2019) (emphasis added). Courts in this district have hinted that a plaintiff may need to know the identity of the prescribing provider. *See Baca v. Johnson & Johnson*, No. CV-20-01036-PHX-DJH, 2020 WL 6450294, at *3 (D. Ariz. Nov. 2, 2020) (dismissing where complaint "d[id] not name the treating physicians who received the allegedly inadequate warning" or state they would have acted differently if properly warned); *Mills v. Bristol-Myers Squibb Co.*, No. CV 11-00968-PHX-FJM, 2011 WL 4708850, at *3 (D. Ariz. Oct. 7, 2011) (dismissing claim where plaintiff alleged what her treating physician would have done "on information and belief" instead of contacting that physician for facts).

But other courts have found that allegations about how prescribers would have acted differently if properly warned can survive the pleadings stage so long as the plaintiff also alleges how that different behavior would have prevented harm (as Herndon does). This includes cases where the physician may not have been identified but the complaint nonetheless specifies what a provider would have done differently. *See Colbath v. Merck & Co.*, No. 3:21-CV-120-W (DEB), 2022 WL 935195, at *4 (S.D. Cal. Mar. 29, 2022)

(denying motion to dismiss where plaintiff alleged "upon information and belief, Plaintiff's medical providers would not have offered or recommended [medication] to Plaintiff."); *Broge v. ALN Int'l, Inc.*, No. 17-CV-07131-BLF, 2019 WL 2088420, at *2 (N.D. Cal. May 13, 2019) (denying motion to dismiss despite "conclusory" allegations warning would have altered physician's decision); *Baker v. Bayer Healthcare Pharms., Inc.*, No. C13-0490 TEH, 2013 WL 6698653, at *5 (N.D. Cal. Dec. 19, 2013) (denying motion to dismiss where plaintiff alleged "Plaintiff did not have the same knowledge as Defendant and no adequate warning was communicated to her or her physician(s)"). These opinions sometimes point out that before discovery, it can be difficult for a plaintiff to allege non-conclusory facts about a specific doctor's decision-making. *See Colbath*, 2022 WL 935195, at *4 (S.D. Cal. Mar. 29, 2022); *see also Mohr v. Targeted Genetics, Inc.*, 690 F. Supp. 2d 711, 718-20 (C.D. Ill. 2010) ("It is difficult to know, prior to discovery, whether [plaintiff's] physician would have prescribed [the drug] if there were additional warnings.").

Ultimately, the identity of the prescribing physician is not a required element to show causation. Plaintiffs must allege facts showing that had a proper warning been given, the patient or doctor would have acted differently and the injury would not have happened. *Murrell*, 2013 WL 1882193, at *6 (citing *Mills*, 2011 WL 4708850, at *3). Including facts directly from the specific provider is one way to plausibly make that showing, but so may be facts about information the prescriber relied on, whether the prescriber would have considered alternatives, and other precautions the prescriber would have taken. *Id.*; *Welch*, 2012 WL 4711899, at *1. In cases dismissing failure-to-warn claims because of silence on the prescriber's identity, the complaint also lacks other facts plausibly supporting the causation allegation. *Murrell*, 2013 WL 1882193, at *6 (dismissing claim because "simply alleging that a failure to warn was one of the causes of injury is insufficient as a matter of law"); *see also Baca*, 2020 WL 6450294, at *3 (dismissing claim in part because complaint did not allege "physicians would have acted differently had they received a different warning").

Herndon has clearly alleged which warnings were missing; that given a proper warning, her physicians would have noticed her risk factors and prescribed an alternative drug, monitored her more closely, or told her to watch for symptoms; and their changed behavior would have prevented harm. Based on these facts about the providers' decision-making, she has properly alleged failure-to-warn at this stage. The motion to dismiss is denied.

Accordingly,

**IT IS ORDERED** the second Motion to Dismiss (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED as follows**:

The parties are directed to meet, confer, and develop a Rule 26(f) Joint Case Management Report, which must be filed **within 4 weeks of the date of this order**. It is the responsibility of plaintiff(s) to initiate the Rule 26(f) meeting and prepare the Joint Case Management Report. Defendant(s) shall promptly and cooperatively participate in the Rule 26(f) meeting and assist in preparation of the Joint Case Management Report.

The Joint Case Management Report shall contain the following information in separately-numbered paragraphs.

1. The parties who attended the Rule 26(f) meeting and assisted in developing the Joint Case Management Report;

2. A list of all parties in the case, including any parent corporations or entities (for recusal purposes);

3. Any parties that have not been served and an explanation of why they have not been served, and any parties that have been served but have not answered or otherwise appeared;

4. A statement of whether any party expects to add additional parties to the case or otherwise amend pleadings;

5. The names of any parties not subject to the court's personal (or *in rem*) jurisdiction;

6. A description of the basis for the court's subject matter jurisdiction, citing

specific jurisdictional statutes. If jurisdiction is based on diversity of citizenship, the report shall include a statement of the citizenship of every party and a description of the amount in dispute. *See* 28 U.S.C. §1332;

7.  A short statement of the nature of the case (no more than three pages), including a description of each claim, defense, and affirmative defense;

8.  A listing of contemplated motions and a statement of the issues to be decided by those motions;

9.  Whether the case is suitable for reassignment to a United States Magistrate Judge for all purposes or suitable for referral to a United States Magistrate Judge for a settlement conference;

10. The status of any related cases pending before this or other courts;

11. A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information ("ESI"), including the parties' preservation of ESI and the form or forms in which it will be produced;

12. A discussion of any issues relating to claims of privilege or work product;

13. A discussion of necessary discovery, which should take into account the December 1, 2015 amendments to Rule 26(b)(1) and should include:

    a.  The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case;

    b.  Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure;

    c.  The number of hours permitted for each deposition. The parties also should consider whether a total number of deposition hours should be set in the case, such as twenty total hours for plaintiffs and twenty total hours for defendants. Such overall time limits have the advantage of providing an incentive for each side to be as efficient as possible in each deposition, while also allowing parties to allocate time among witnesses depending on the importance and complexity of subjects to

be covered with the witnesses;

14. Proposed deadlines for each of the following events. In proposing deadlines, the parties should keep in mind the Case Management Order will contain deadlines to govern this case and once the dates have been set the court will vary them only upon a showing of good cause. A request by counsel for extension of discovery deadlines in any case that has been pending more than two years must be accompanied by a certification stating the client is aware of and approves of the requested extension. The court does not consider settlement talks or the scheduling of mediations to constitute good cause for an extension. The parties must propose the following:

a. A deadline for the completion of fact discovery, which will also be the deadline for pretrial disclosures pursuant to Rule 26(a)(3). This deadline is the date by which all fact discovery must be *completed*. Discovery requests must be served and depositions noticed sufficiently in advance of this date to ensure reasonable completion by the deadline, including time to resolve discovery disputes. Absent extraordinary circumstances, the court will not entertain discovery disputes after this deadline;

b. Dates for full and complete expert disclosures and rebuttal expert disclosures, if any;

c. A deadline for completion of all expert depositions;

d. A date by which any Rule 35 physical or mental examination will be noticed if such an examination is required by any issues in the case;

e. A deadline for filing dispositive motions;

f. Case-specific deadlines and dates, such as the deadline to file a motion for class certification or a date on which the parties are available for a *Markman* (patent claim construction) hearing;

g. A date by which the parties shall have engaged in face-to-face good

- 9 -

faith settlement talks;

    h.    Whether a jury trial has been requested and whether the request for a jury trial is contested, setting forth the reasons if the request is contested;

    i.    Any other matters that will aid the court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1;

15.    A statement indicating whether the parties would prefer that the court hold a case management conference before issuing a scheduling order—and, if so, an explanation of why the conference would be helpful.

**IT IS FURTHER ORDERED** the parties shall file a proposed Case Management Order containing all the proposed dates at the same time they file the Rule 26(f) Case Management Report. The proposed Case Management Order must also be emailed in Word format to Lanham_Chambers@azd.uscourts.gov.

Dated this 8th day of April, 2026.

                              **Honorable Krissa M. Lanham**
                              **United States District Judge**